### In the Matter of Terry E. JOHNSTON.

### No. 64S00–9601–DI–86.

Supreme Court of Indiana.

Aug. 26, 1998.

---

Thomas Anthony Durkin, Chicago, IL, for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Because the respondent, attorney Terry E. Johnston, neglected various clients' legal affairs, mismanaged client funds which he held in trust, and failed to abide by a Disciplinary Commission subpoena, we find that he should be suspended from the practice of law in this state for at least eight months.

This attorney disciplinary action comes before this Court upon the duly-appointed

hearing officer's findings of fact and conclusions of law. The respondent has petitioned this Court for review of that report, pursuant to Ind.Admission and Discipline Rule 23(15). Our review of disciplinary cases is *de novo* in nature, and we examine the entire record presented. *Matter of Peteet,* 679 N.E.2d 137 (Ind.1997).

As a preliminary matter, we note that the respondent was admitted to the bar of this state in 1971 and practices law in Valparaiso, Indiana. The Commission's *Amended Verified Complaint for Disciplinary Action* is in four counts, and the hearing officer found misconduct as to each count.

█ Within the review context outlined above, we now find that, under Count I, a client (the "defendant") hired the respondent in 1990 to pursue modification of his 50–year sentence for felony murder. The defendant's mother tendered two payments to the respondent for payment of legal fees in the amounts of $250 and $1,000. To assist the respondent, the mother acquired and delivered to the respondent a transcript of the felony murder trial, consisting of seven volumes. During the next several years, the mother tried approximately 50 times to reach the respondent by telephone to learn the status of the case. She was successful in reaching him on only about 17 occasions.

On March 31, 1993, some three years after being retained, the respondent filed a "Motion to Correct Sentence and/or Petition to Modify Sentence." That motion consisted of a single substantive statement: "The Defendant qualifies for a modification of sentencing pursuant to statute." The next day, the state moved to strike the pleading based on its lack of any factual basis or legal authority for the relief sought. On April 1, 1993, the trial court granted the state's motion and directed the defendant to file a more specific pleading. On January 18, 1994, the respondent filed a second *Petition to Modify Sentence,* which the trial court summarily denied without hearing on March 14, 1994. The respondent failed to supply his client with a copy of the petition or a copy of the order denying it.

The mother never received any billing statements from the respondent, other than a May 15, 1991, statement documenting four-tenths of an hour of work performed. In September 1994, she retrieved the transcript from the respondent's office and discovered that it was moldy, significantly damaged from water, and infested with insects. The respondent explained that he had stored it in his basement where it suffered water damage. The mother demanded full repayment of the $1,250 she had paid to the respondent. The respondent never replied.

Professional Conduct Rule 1.3 requires lawyers to act with reasonable diligence and promptness in representing their clients. By failing to take prompt meaningful action on behalf of his client in pursuit of sentence modification, the respondent violated Ind.Professional Conduct Rule 1.3. Professional Conduct Rule 1.4 requires lawyers to keep clients reasonably informed about the status of matters, to promptly comply with reasonable requests for information, and to explain matters to the extent reasonably practicable to permit clients to make informed decisions regarding the representation. The respondent failed adequately to communicate with his client and thus violated Prof.Cond.R. 1.4. Professional Conduct Rule 1.16(d) requires lawyers to take reasonably practicable steps to protect clients' interests after termination of representation. The respondent, by failing to return unearned fees and by surrendering possession of the transcript in a damaged condition, violated Prof. Cond.R. 1.16(d).

Pursuant to Count II of the *Verified Complaint,* we now find that in 1991, the respondent met with a client who had been injured at work when struck by a crane. Although the client had at that time already recovered $4,685 from his employer's worker's compensation carrier, in addition to $11,094.35 in medical expenses and $8,301.70 in disability benefits, he sought the respondent's representation in pursuit of a third-party claim to recover benefits from the crane's owner. Any further claims relating to the injury which resulted in recovery were subject to the employer's carrier's lien.

On November 11, 1991, the respondent received $4,392 for his client in resolution of

another claim based on a second unrelated workplace accident. The respondent deposited the check into his client trust account, then met with his client to discuss disposition of the proceeds. They agreed that the respondent would receive $1,000 as his fee and that he would retain possession of an additional $1,300 earmarked for satisfaction of the client's dental bill incurred for injuries he sustained in the crane accident. Over the next two years, the respondent failed to forward any of the proceeds in satisfaction of the dentist's bill.

On January 26, 1994, the respondent received $21,000 in settlement of the claim against the crane owner. He deposited the funds into his client trust account on March 19, 1994, then met with client on May 1, 1994, to agree on disposition of the proceeds. A handwritten distribution scheme prepared by the respondent at that meeting and agreed to by the client provided for disposition as follows:

| | |
|---|---|
| Client: | $15,500 |
| Employer's carrier: | $ 5,000 |
| Respondent: | $ 500 |

The respondent also agreed to disburse the remaining $1,300 from the 1991 settlement as follows:

| | |
|---|---|
| Dentist: | $980 |
| X-rays: | $175 |
| Client: | $145 |

That day, the clients received their money from the respondent. The respondent wrote checks to the dentist and the employer's carrier that day; however, the respondent later failed to forward the checks to either party. Subsequently, the client independently learned that the dentist's bill remained unpaid. Ultimately, the respondent settled with the dentist's collection agency by paying $505.71 on August 11, 1995.[1] The remaining $474.29 of the $1,300 in proceeds from the 1991 settlement remains unaccounted for, as the balance of the respondent's client trust account during relevant periods was less than that amount. During that time, the respondent drew at least one check on the account for personal expenditures and later admitted that he commingled personal funds in that account with his client's. Additional-

ly, the Internal Revenue Service levied against the trust account on May 24, 1994, to satisfy the respondent's personal income tax liability of $4,199.14.

In early 1995, a lawyer for the employer's carrier notified the respondent that although the carrier had earlier accepted the respondent's offer of payment of $5,000 in satisfaction of its lien, it was then rejecting the respondent's subsequent "unsupported request" to further reduce the settlement amount to $3,000, and that the carrier would initiate legal action if it did not receive the $5,000 settlement within two weeks. Upon nonpayment within that time, the carrier filed suit. Thereafter, the respondent paid $5,000 in settlement, along with $1,500 for attorney and filing fees. The respondent never informed his client of the status of the dentist's bill or of his communications with the employer's carrier.

Professional Conduct Rule 1.15(a) requires lawyers to hold the property of clients that is in their possession in connection with a representation separate from their own. By commingling his funds with his client's in the trust account, the respondent violated the rule. Professional Conduct Rule 1.15(b) requires lawyers promptly to deliver to third persons funds that come into the lawyer's possession that the third person is entitled to receive. By failing to deliver quickly the proceeds of the settlements to the dentist and the employer's carrier, the respondent violated Prof.Cond.R. 1.15(b). Professional Conduct Rule 8.4(b), (c), and (d) provide, respectively, that it is professional misconduct for a lawyer to commit a crime that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects, to engage in conduct which involves deceit or misrepresentation, or to engage in conduct that is prejudicial to the administration of justice. By converting his client's settlement proceeds to his own use, as evidenced by the depleted balance of his client trust account and his expenditure of funds from trust for personal obligations, the respondent violated Prof.Cond.R. 8.4(b). By

---

1. The hearing officer found that the evidence did not conclusively establish whether the $505.71

was accepted as final or complete satisfaction of the debt.

informing his client that he would pay third parties, and even going to the trouble of writing checks that were not forwarded, the respondent engaged in conduct involving deceit and misrepresentation in violation of Prof.Cond.R. 8.4(c).

■ Under Count III, we now find that on July 26, 1995, this Court found the respondent to be in civil contempt of court for failing to comply with an investigative subpoena[2] issued by the Commission during its probe into certain allegations underlying this action. *Matter of Johnston,* Case No. 64S00–9506–DI–778 (Ind., July 26, 1995). By such failure, the respondent violated Prof. Cond.R. 8.1(b), which provides that lawyers shall not knowingly fail to respond to a lawful demand for information from the Commission.

Under Count IV, we now find that in 1991, two clients with a pending civil suit hired the respondent to continue representation of their interests. They agreed that the respondent would be entitled to one-third of any recovery as his fee, but did not memorialize that agreement in writing. During the next three years, neither client met personally with the respondent, nor did either speak with the respondent by phone despite the approximately fifty calls they placed to his office. In October 1994, the respondent wrote to his clients, informing them that a pre-trial hearing was scheduled for a particular date. The clients, each taking a day off from work to attend the hearing, arrived at the courthouse only to be told by court personnel that there was no such hearing scheduled. Later that day and for all of the following year, they were unable to locate or speak to the respondent for explanation. The clients did manage to schedule a meeting with the respondent on March 15, 1996, during which the respondent had them sign medical release forms. Upon request, he managed to produce their dusty file from his office's basement. The next month, the clients returned to the respondent's office to retrieve their file. They discovered several items missing from it, including various medical records and a videotape. They also discovered several documents in the file, including a "Substitution of Attorneys" and "Authorization for Release of Information" neither of which had ever been filed with the court.

Later, the respondent and the clients again met. The respondent requested return of the file, but the clients refused to comply, informing the respondent of their intention to sue him in small claims court. On May 16, 1996, the respondent and the clients agreed, in writing, that the respondent would pay $7,000 to the clients via installment payments. In return, the clients agreed to: (1) discontinue pursuing the small claims action; (2) "drop" a grievance they had filed with the Commission; and (3) "never say anything bad about Terry Johnston to anyone." The respondent then commenced paying his clients $100 per week. At one point, the respondent's bank refused to honor a $2,500 check he wrote the clients pursuant to their agreement. Further machinations involving payment of the $7,000 ensued, culminating with the clients again suing the respondent in small claims court. Ultimately, the respondent paid his clients more than $9,000, the amount in excess of $7,000 being characterized by the clients as "interest." At disciplinary hearing, the respondent admitted that he paid the funds to gain the clients' cooperation in dismissing the disciplinary matter. At least seven potential successor attorneys contacted by the clients indicated that they would not take over representation of them on their claim due to the age of the case and the respondent's involvement in it.

During investigation of the grievance underlying Count IV, the Commission on April 29, 1996, demanded that the respondent provide a written response to the clients' allegations.[3] The respondent never responded. On November 1, 1996, the Commission subpoenaed the respondent, demanding that he provide various documents by December 4, 1996. The respondent did not comply with that subpoena in a timely fashion.

■ Professional Conduct Rule 1.1 requires that attorneys provide competent rep-

---

**2.** Ind.Admission and Discipline Rule 23(9)(f).

**3.** Admis.Disc. R. 23(10)(a)(2).

resentation to their clients. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. *Id.* Between 1991 and 1996, the respondent took no meaningful action on behalf of his clients, lost items from the case file, failed to communicate with them about the status of their case, and misinformed them about the time and date of a pre-trial hearing. That conduct violated Prof.Cond.R. 1.1, in addition to Prof.Cond.R. 1.3 and 1.4(a).[4] By falsely informing his clients that a pretrial hearing was scheduled when that was not true, the respondent violated Prof.Cond.R. 8.4(c). By attempting to induce his clients to "drop" their disciplinary grievance against him, the respondent engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

■ Professional Conduct Rule 1.5(c) requires contingent fee agreements to be in writing and state the method by which the fee is to be determined. The respondent's oral agreement with his clients was in violation of that rule. Finally, by failing to comply with the Commission's demand for a response to the clients' grievance and by failing timely to comply with its November 1, 1996, subpoena, the respondent violated Prof. Cond.R. 8.1(b).

The respondent has submitted a petition for review of the hearing officer's report, therein requesting that we reopen the evidentiary phase of this proceeding in order to accept additional evidence relating to the respondent's emotional and physical difficulties which he argues contributed to the misconduct in this case. He also argues that the hearing officer's recommendation that he be suspended from the practice of law for at least eight months is excessive.

The record reveals that hearing of this matter occurred over four days. The respondent's counsel of record entered an appearance before the fourth day of hearing, after the Commission rested. Counsel for

the respondent sought leave of court during hearing for additional time to prepare for presentation of additional health-related evidence in mitigation. The hearing officer denied that motion.

In response to the respondent's petition for review, the Commission points out that Admis.Disc. R. 23(15)(b) provides that a petition for review may be filed if a party does not concur in a factual finding made by the hearing officer. Since the respondent by his own admission contests none of the hearing officer's factual findings, the Commission asserts that the respondent's petition is improper.

■ Admission and Discipline Rule 23(15)(b) provides that "in the event a party does not concur in a factual finding made by the hearing officer and asserts factual error in such finding in the petition for review, such party shall file with the petition for review a record of all the evidence before the hearing officer relating to this factual issue." However, subsection (a) immediately preceding provides that the respondent or the Commission "shall have thirty . . . days after the filing of the hearing officer's finding and recommendation to petition for review of the same . . ." Thus, the provision contemplates both assertion of error as to factual findings (which must be supported by a transcription of the evidence submitted at hearing as to the alleged erroneous finding) as well as assertion of error as to the hearing officer's legal conclusions and recommendations. The review context comprises this Court's *de novo* review of disciplinary cases which encompasses not only the hearing officer's report, but all matters presented. *See Matter of Peteet,* 679 N.E.2d 137 (Ind.1997) (where attorney failed to submit factual record relating to contested finding of the hearing officer, we considered the petition for review only to the extent it challenged conclusions of law based on the hearing officer's factual findings). *See also Matter of Sekerez,* 458 N.E.2d 229, 235 (Ind.1984).[5] Accordingly, we

---

**4.** *See* Count I, *supra.*

**5.** In *Matter of Sekerez,* the respondent in his petition for review alleged that the hearing officer's factual findings were erroneous because of

bias and prejudice and because his findings were based on perjured testimony. The respondent submitted only a transcript of *his* case in chief to support his contentions. We found there that the tendered record was inadequate under Ad-

will recognize the respondent's petition for review to the extent that it does not allege error as to specific factual findings made by the hearing officer.

■ First, we address the respondent's request that this case be reopened for the submission of additional evidence in mitigation. In regard to the respondent's physical and emotional condition, the hearing officer in his report describes the maladies from which the respondent contends he suffers.[6] The hearing officer recognized some mitigating utility in this evidence, stating that he accepted the proposition that those problems contributed to respondent's misconduct and therefore positing that the respondent's actions were rooted in "patterns and habits of neglect" instead of a "calculated pattern of deceit, malice, or greed." He made these rather detailed findings despite the respondent's eleventh-hour retention of counsel and subsequent last minute scramble to submit the evidence. In light of the hearing officer's thoughtful analysis of it, we are convinced that we have an adequate body of evidence upon which to base our decision on what sanction is appropriate for the misconduct committed by the respondent. We therefore decline to allow this case to be reopened for presentation of further evidence pertaining to the respondent's physical and emotional condition.

■ An eight-month suspension as recommended by the hearing officer, the respondent contends, is too long for the misconduct that occurred. We disagree. Whatever the underlying cause, the respondent's lack of diligence and fund mismanagement subjected his clients' causes of action and his clients' and third parties' property interests to consistent and damaging neglect. Unfortunately, the respondent's chronic neglect and inattention even spilled over into the Commission's investigation, resulting in additional time and expense, as well as precious judicial resources, having to be marshaled to resolve the Commission's charges. More lenient treatment by this Court has not worked in the past [7]—the respondent continued to fail to respond to Commission inquiries even after his censure and fine for civil contempt. We are therefore firmly convinced that a substantial period of suspension is warranted to impart to the respondent the significance of his actions, to allow him time to address his physical and emotional conditions, and to protect the public and profession from further misconduct.

It is, therefore, ordered that the respondent, Terry E. Johnston, is hereby suspended from the practice of law for a period of not less than eight (8) months, beginning October 5, 1998, at the conclusion of which he may apply to this Court for reinstatement, provided he pays the costs of this proceeding and otherwise complies with the requirements of Admis.Disc. R. 23.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of the respondent as reflected in the records of the Clerk.

mis.Disc. R. 23(15)(b) to support assertions of factual error, and, accordingly, reviewed only "the conclusions thereunder and the Respondent's constitutional challenges." *Sekerez* at 235. *See also Matter of Carmany*, 466 N.E.2d 16 (Ind. 1984), where we noted that even though our review of disciplinary cases is *de novo*, when a question of fact is at issue it is incumbent upon each party to present facts relevant to the issue with appropriate references to the record.

6. Specifically, the hearing officer found that the respondent suffered from palsy, impaired vision, headaches, pain, stress, stomach pain, bowel problems, a viral infection of the right big toe, a diabetic ulcer, sleeping problems, and depression.

7. In the respondent's contempt action, this Court fined him $200 and ordered him to comply with the Commission's subpoena or be incarcerated until he complied.